IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| **Old Republic Insurance Company,** | ) | Case No. 3:25-cv-13404-SAL |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **COMPLAINT** |
| v. | ) | |
| | ) | |
| **R.W. Harris, Inc.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

Plaintiff Old Republic Insurance Company ("Old Republic"), by and through its undersigned counsel, complaining of Defendant R.W. Harris, Inc. ("R.W. Harris"), alleges and pleads as follows:

## PARTIES AND JURISDICTION

1. Plaintiff is a foreign corporation registered and existing pursuant to the laws of the State of Pennsylvania, with its principal place of business in Chicago, Illinois.

2. Upon information and belief, Defendant is a foreign corporation registered and existing under the laws of the State of Ohio, with its principal place of business in Clearwater, Florida.

3. The jurisdictional amount exceeds Seventy-Five Thousand Dollars ($75,000), as a declaration is sought regarding coverage of a commercial general liability insurance policy with coverage limits of $1,000,000 per occurrence, $2,000,000 general aggregate limit, and $2,000,000 products/completed operations aggregate limit. This lawsuit is brought in reference to a claim by Defendant to recover in excess of $1,200,000, which Defendant alleges it paid to resolve an underlying claim that Defendant failed to perform its obligations under a construction subcontract.

4. This Court has subject matter jurisdiction over this matter pursuant to Article III of the United States Constitution, 5 U.S.C. § 701 et seq., and 28 U.S.C. § 1332.

5. Plaintiff files this declaratory judgment action under 28 U.S.C. § 2201.

6. Venue is proper in the Columbia Division because a substantial part of the events or omissions giving rise to the claim occurred in Lexington County, South Carolina.

7. Upon information and belief, this Court has personal jurisdiction over Defendant.

## FACTS

8. Defendant R.W. Harris is the named insured under commercial general liability policy number MWZY 315786 22, issued by Plaintiff Old Republic, with a policy period running from July 1, 2022, through July 1, 2023 (the "2022 Policy"). R.W. Harris's mailing address listed on the Declarations Page of the 2022 Policy is 12300 44th St. N., Clearwater, FL 33762. A copy of the policy is attached as **Exhibit 1**.

9. Defendant R.W. Harris is the named insured under commercial general liability policy number MWZY 315786 23, issued by Plaintiff Old Republic with a policy period running from July 1, 2023, through July 1, 2024 (the "2023 Policy"). R.W. Harris's mailing address listed on the Declarations Page of the 2023 Policy is 12300 44th St. N., Clearwater, FL 33762. A copy of the policy is attached as **Exhibit 2**.

10. The 2022 Policy and the 2023 Policy are collectively referred to as the "Old Republic Policies."

## The Florida Lawsuit

11. On or about February 21, 2024, Energy Erectors, Inc. ("Energy Erectors") filed a summons and complaint in the Circuit Court of the Sixth Judicial Circuit in Pinellas County, Florida, Case No. 24-000848-CI, captioned *Energy Erectors, Inc., a Florida Corporation v. RWH*

*Goettle Construction, Inc. d/b/a R.W. Harris, Inc., an Ohio Corporation* (the "Florida Lawsuit"). A copy of the complaint in the Florida Lawsuit is attached hereto as **Exhibit 3**.

12. The complaint in the Florida Lawsuit alleged that, effective March 20, 2021, EC Source Services, LLC ("EC Source") entered into a subcontract with R.W. Harris for R.W. Harris to "construct drilled shafts, which are deep foundations comprised of large quantities of concrete and steel rebar that were used to support the construction of . . . large, vertical industrial towers supporting . . . transmission lines." Ex. 3, Florida Compl. at ¶ 7. The complaint alleged that Energy Erectors was the assignee of EC Source's rights under the subcontract. Ex. 3, Florida Compl. at ¶ 9.

13. The complaint in the Florida Lawsuit alleged that R.W. Harris committed "material breach(es)" of the subcontract by failing to adhere to the schedule and that R.W. Harris's work was "deficient, defective, and not in conformance with the Contract Documents nor completed to Energy Erectors and/or [the owner's] satisfaction as contractually required." Ex. 3, Florida Compl. at ¶ 12.

14. Specifically, Energy Erectors alleged R.W. Harris "failed to timely or properly construct 'Shaft #79' in that it contained voids in the concrete and lack of sufficient concrete cover protecting the steel rebar." Ex. 3, Florida Compl. at ¶ 12.

15. Energy Erectors alleged that "[t]hese failures ultimately resulted in [R.W. Harris] having to construct 'Shaft #79' three times over the course of many months, resulting in corresponding delay, before [R.W. Harris] managed to meet the minimum requirements for acceptance." Ex. 3, Florida Compl. at ¶ 12.

16. Energy Erectors alleged that R.W. Harris's "belated and defective work caused extended Project delays which resulted in substantial damages incurred by Energy Erectors,

3

including, but not limited to, significant costs associated with stand by time for Energy Erector's crews, other subcontractor impacts and extended equipment and supply rental costs." Ex. 3, Florida Compl. at ¶ 13.

17. In the Florida Lawsuit, Energy Erectors asserted causes of action for breach of contract, breach of express warranty, and contractual indemnification. Ex. 3, Florida Compl. at ¶¶ 16-29.

18. On March 21, 2024, R.W. Harris, through its retained counsel, removed the Florida Lawsuit to the United States District Court for the Middle District of Florida, Case No. 8:24-cv-00718-MSS-NHA.

19. Old Republic did not exercise exclusive control of the defense of the insured in the Florida Lawsuit.

20. On May 21, 2024, R.W. Harris was dismissed from the Florida Lawsuit. Upon information and belief, R.W. Harris did not settle the Florida Lawsuit with Energy Erectors and did not otherwise pay any money to Energy Erectors to obtain dismissal from the Florida Lawsuit.

### The South Carolina Lawsuit

21. On April 26, 2024, R.W. Harris filed a summons and complaint in the Court of Common Pleas, Eleventh Judicial Circuit, Lexington County, South Carolina, Case No. 2024-CP-32-01855, captioned *R.W. Harris, Inc. v. Energy Erectors, Inc.* (the "South Carolina Lawsuit"). A copy of the complaint in the South Carolina Lawsuit is attached as **Exhibit 4**.

22. In the South Carolina Lawsuit, R.W. Harris alleged that, "[o]n or about March 9, 2021, Dominion Energy South Carolina, Inc. . . . issued a purchase order to MasTec North America, Inc. . . . to construct and rebuild the Church Creek-Queensboro 230 (115) KV line from

Queensboro substation to Rushland Plantation Road . . ., so Santee Cooper could tie into [Dominion Energy's] system." Ex. 4, South Carolina Compl. at ¶ 4.

23. R.W. Harris further alleged in the South Carolina Lawsuit that "Mastec subcontracted its scope of work on the Project to EC Source Services, LLC." Ex. 4, South Carolina Compl. at ¶ 4.

24. R.W. Harris further alleged in the South Carolina Lawsuit that EC Source retained R.W. Harris "to install ten (10) drilled shaft foundations on the Project . . . to serve as the below grade support for utility transmission towers." Ex. 4, South Carolina Compl. at ¶ 4.

25. R.W. Harris further alleged in the South Carolina Lawsuit that EC Source assigned its subcontract with R.W. Harris to Energy Erectors. Ex. 4, South Carolina Compl. at ¶ 23.

26. R.W. Harris alleged that "[d]uring construction of the Project, a dispute arose between [R.W. Harris, EC Source], and/or Mastec, concerning installation of one of the drilled shaft foundations, commonly referred to as Drilled Shaft 79." Ex. 4, South Carolina Compl. at ¶ 30.

27. R.W. Harris alleged Mastec rejected Drilled Shaft 79 after installation. Ex. 4, South Carolina Compl. at ¶ 32.

28. R.W. Harris alleged that, despite R.W. Harris's remediation efforts, Mastec and EC Source "rejected the entire foundation, demanding a full demolition and replacement of the shaft." Ex. 4, South Carolina Compl. at ¶ 36.

29. R.W. Harris alleged that it demolished and replaced the shaft, which "resulted in a payment dispute . . ., with Mastec, [EC Source], and/or [Energy Erectors] asserting Project Schedule delays and various other damages and back charges resulting from the installation of Drilled Shaft 79." Ex. 4, South Carolina Compl. at ¶¶ 37-38.

5

30. In the South Carolina Lawsuit, R.W. Harris sought "all costs [it] incurred in complying with the unreasonable rejection and demand for replacement [of Drilled Shaft 79]." Ex. 4, South Carolina Compl. at ¶ 39.

31. R.W. Harris alleged that it was entitled to recover against Energy Erectors $1,149,952.50 for "work performed under the [contract], plus an additional sum for damages related to the wrongfully directed full replacement and installation of Drilled Shaft 79." Ex. 4, South Carolina Compl. at ¶ 50.

32. R.W. Harris asserted causes of action against Energy Erectors for breach of contract and quantum meruit/unjust enrichment. Ex. 4, South Carolina Compl. at ¶¶ 51-60.

33. Energy Erectors never filed a counterclaim against R.W. Harris in the South Carolina Lawsuit. Therefore, R.W. Harris never requested that Old Republic provide it with a defense in the South Carolina Lawsuit.

34. Old Republic did not exercise exclusive control of the defense in the South Carolina Lawsuit.

35. On September 6, 2024, Energy Erectors filed a motion to dismiss the South Carolina Lawsuit.

36. On January 9, 2025, R.W. Harris and Energy Erectors entered into a Settlement Agreement and Release (the "Settlement Agreement"). A copy of the Settlement Agreement is attached as **Exhibit 5**.

37. Pursuant to the Settlement Agreement, R.W. Harris and Energy Erectors agreed that Energy Erectors would "retain any and all contract balance that is allegedly due [R.W. Harris] related to the Project" and that "[n]o other payment shall be made by or to any party to this

Settlement Agreement." Ex. 5, Settlement Agreement at ¶ 2(a). The parties further agreed to the dismissal of the South Carolina Lawsuit. Ex. 5, Settlement Agreement at ¶ 2(b).

38. On January 16, 2025, the R.W. Harris and Energy Erectors filed a Joint Stipulation of Dismissal with Prejudice, dismissing the South Carolina Lawsuit.

### The Current Dispute

39. Upon information and belief, R.W. Harris claims that it is entitled to recover from Old Republic, pursuant to the Old Republic Policies, (1) the amount R.W. Harris paid in legal fees and costs in the Florida Lawsuit and (2) the contract amounts that R.W. Harris claims were due from Energy Erectors, and which amounts R.W. Harris reportedly waived as part of the Settlement Agreement in the South Carolina Lawsuit.

40. Based upon correspondence received from R.W. Harris, it does not appear that R.W. Harris claims it is entitled to recover from Old Republic the amount R.W. Harris paid in legal fees and costs in the South Carolina Lawsuit, which R.W. Harris pursued affirmatively and which did not include any counterclaim asserted against R.W. Harris.

41. Old Republic seeks declaratory relief from the Court as follows:

   a. That Old Republic owed no duty to defend R.W. Harris in the Florida Lawsuit;

   b. That Old Republic owes no duty to reimburse R.W. Harris for legal fees and costs R.W. Harris incurred in the Florida Lawsuit;

   c. That Old Republic owes no duty to indemnify R.W. Harris for the contract amounts that R.W. Harris claims were due from Energy Erectors, and which amounts R.W. Harris reportedly waived as part of the Settlement Agreement in the South Carolina Lawsuit; and

7

  d. That Old Republic owes no duty to reimburse R.W. Harris for legal fees and costs R.W. Harris incurred in the South Carolina Lawsuit, to the extent R.W. Harris claims entitlement to the same.

## The Old Republic Policies

42. The Old Republic Policies identify the following named insured and mailing address:

> R.W. Harris, Inc.
> 12300 44th St N
> Clearwater, FL 33762

43. The Old Republic Policies provide as follows:

*SECTION I – COVERAGES*
*COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY*
*1. Insuring Agreement*
>*a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.*

44. The Old Republic Policies define "bodily injury" as *"bodily injury, sickness or disease sustained by a person, including the death resulting from any of these at any time."*

45. The Old Republic Policies define "property damage" as follows:

>*a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or*
>
>*b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.*

46. The Old Republic Policies further provide as follows:

>*b. This insurance applies to "bodily injury" and "property damage" only if:*

8

> *(1) The "bodily injury" or "property damage is caused by an "occurrence" that takes place in the "coverage territory."*

47. The Old Republic Policies define "occurrence" as *"an accident, including continuous or repeated exposure to substantially the same general harmful conditions."*

48. The Old Republic Policies further provide that the insurance *"applies to 'bodily injury' and 'property damage' only if:*

> *(1) Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.*

49. The Old Republic Policies require R.W. Harris to *"[c]ooperate with [Old Republic] in the investigation or settlement of the 'claim' or defense against the 'suit.'"*

50. The Old Republic Policies further provide that *"[n]o insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without [Old Republic's] consent."*

51. The Old Republic Policies contain exclusions from coverage. As stated in relevant part in the policies, *"[t]his insurance does not apply to:*

> ***a. Expected or Intended Injury***
>
> *"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.*
>
> ***b. Contractual Liability***
>
> *"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:*

9

*(1) That the insured would have in the absence of the contract or agreement; or*

*(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:*

  *(a) Liability to such party for, or the cost of, that party's defense has also been assumed in the same "insured contract"; and*

  *(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged*

. . .

**j. Damage to Property**
*"Property damage" to:*

*(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;*

*(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;*

*(3) Property loaned to you;*

*(4) Personal property in the care, custody or control of the insured;*

*(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or*

*(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.*

*Paragraphs **(1), (3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits of Insurance.*

*Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.*

*Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.*

*Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".*

### k. Damage to Your Product

*"Property damage" to "your product" arising out of it or any part of it.*

### l. Damage to Your Work

*"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".*
*This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.*

### m. Damage to Impaired Property Or Property Not Physically Injured

*"Property damage" to "impaired property" or property that has not been physically injured, arising out of:*

*(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or*
*(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.*

*This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.*

### n. Recall Of Products, Work Or Impaired Property

*Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:*

*(1) "Your product";*
*(2) "Your work"; or*
*(3) "Impaired property"; if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.*

52. The Old Republic Policies contain additional provisions, conditions, and exclusions, and Plaintiff incorporates the policies in their entirety herein.

**FOR A FIRST DECLARATION**

53. The allegations in paragraphs 1-52 above are realleged as though repeated verbatim herein.

54. The Florida Lawsuit named as a defendant "RWH Goettle Construction, Inc. d/b/a R.W. Harris, Inc., an Ohio Corporation." RWH Goettle Construction, Inc. is not the named insured in the Old Republic Policies and does not otherwise qualify as an insured under the Old Republic Policies.

55. The Florida Lawsuit, which arose out of R.W. Harris's performance under a construction subcontract, did not allege "bodily injury" or "property damage," as those terms are defined in the Old Republic Policies.

56. The Florida Lawsuit did not allege an "occurrence" as that term is defined in the Old Republic Policies because it did not allege or seek recovery for property damage resulting from R.W. Harris's faulty workmanship.

57. Upon information and belief, R.W. Harris's work under the construction subcontract began in 2021 and, upon information and belief, R.W. Harris or an authorized employee of R.W. Harris knew of facts leading to the Florida Lawsuit prior to the coverage periods in the Old Republic Policies.

58. Upon information and belief, all or part of the claims asserted in the Florida Lawsuit arose from actions expected or intended on the part of R.W. Harris, including acts of faulty or deficient workmanship.

59. The Florida Lawsuit sought damages from R.W. Harris based on obligations R.W. Harris assumed in the construction subcontract.

60. In the Florida Lawsuit, Energy Erectors alleged it was damaged based R.W. Harris's faulty work under the construction subcontract and warranties or representations R.W. Harris made with respect to its work and/or its product under the construction subcontract.

61. In the Florida Lawsuit, Energy Erectors sought recovery against R.W. Harris in relation to real property on which R.W. Harris was actively performing operations at the time the Old Republic Policies were in effect. Energy Erectors further sought recovery in relation to R.W. Harris's work that, before the work was completed, allegedly required restoration, repair, or replacement due to alleged deficiencies in R.W. Harris's work.

62. Upon information and belief, to the extent Energy Erectors sought damages against R.W. Harris limited to impaired property or property not physically injured, or caused by a recall of R.W. Harris's products, work, or impaired property, coverage is excluded under the Policies.

63. Accordingly, Old Republic is entitled to a declaration that it owed no duty to defend R.W. Harris in the Florida Lawsuit.

## FOR A SECOND DECLARATION

64. The allegations in paragraphs 1-63 above are realleged as though repeated verbatim herein.

65. Old Republic asserts that for each of the reasons it owed no duty to defend R.W. Harris in the Florida Lawsuit (*see* paragraphs 53-63 above), Old Republic also has no duty to reimburse R.W. Harris for legal fees and costs R.W. Harris incurred in the Florida Litigation.

66. Accordingly, Old Republic is entitled to a declaration that it owes no duty to reimburse R.W. Harris for legal fees and costs R.W. Harris incurred in the Florida Lawsuit.

**FOR A THIRD DECLARATION**

67. The allegations in paragraphs 1-66 above are realleged as though repeated verbatim herein.

68. Old Republic asserts that for each of the reasons it owed no duty to defend R.W. Harris in the Florida Lawsuit (*see* paragraphs 53-63 above), Old Republic also has no duty to indemnify R.W. Harris for the contract amounts that R.W. Harris claims were due from Energy Erectors, and which amounts R.W. Harris reportedly waived as part of the Settlement Agreement in the South Carolina Lawsuit.

69. Additionally, the South Carolina Lawsuit was filed by R.W. Harris against Energy Erectors. Upon information and belief, Energy Erectors did not assert any counterclaims against R.W. Harris. Accordingly, the South Carolina Lawsuit did not contain any allegations of bodily injury or property damage against R.W. Harris as those terms are defined in the Old Republic Policies.

70. Accordingly, Old Republic is entitled to a declaration that it owes no duty to indemnify or reimburse R.W. Harris for any costs, fees, expenses, settlement amounts, and/or settlement agreements, including but not limited to any amounts R.W. Harris reportedly waived as part of the Settlement Agreement in the South Carolina Lawsuit.

**FOR A FOURTH DECLARATION**

71. The allegations in paragraphs 1-70 above are realleged as though repeated verbatim herein.

72. Old Republic asserts that for each of the reasons it owed no duty to defend R.W. Harris in the Florida Lawsuit (*see* paragraphs 53-63 above), Old Republic also has no duty to

reimburse R.W. Harris for legal fees and costs R.W. Harris incurred in the South Carolina Lawsuit, to the extent R.W. Harris claims entitlement to the same.

73. Additionally, the South Carolina Lawsuit was filed by R.W. Harris against Energy Erectors. Upon information and belief, Energy Erectors did not assert any counterclaims against R.W. Harris. Accordingly, the South Carolina Lawsuit did not contain any allegations of bodily injury or property damage against R.W. Harris as those terms are defined in the Old Republic Policies.

74. Further, in the South Carolina Lawsuit, R.W. Harris, without notice to or consent from Old Republic, retained and paid for its own counsel. R.W. Harris thereby voluntarily made a payment, assumed an obligation, and/or incurred an expense without Old Republic's consent.

75. Accordingly, Old Republic is entitled to a declaration that it owes no duty to reimburse R.W. Harris for legal fees and costs R.W. Harris incurred in the South Carolina Lawsuit, to the extent R.W. Harris claims entitlement to the same.

**WHEREFORE**, Plaintiff prays the Court to issue declarations that:

(a) Old Republic owed no duty to defend R.W. Harris in the Florida Lawsuit because coverage is validly excluded for the reasons set forth above;

(b) Old Republic owes no duty to reimburse R.W. Harris for legal fees and costs R.W. Harris incurred in the Florida Lawsuit because coverage is validly excluded for the reasons set forth above;

(c) Old Republic owes no duty to indemnify R.W. Harris for the contract amounts that R.W. Harris claims were due from Energy Erectors, and which amounts R.W. Harris reportedly waived as part of the Settlement Agreement in the South Carolina Lawsuit because coverage is validly excluded for the reasons set forth above;

(d)     Old Republic owes no duty to reimburse R.W. Harris for legal fees and costs R.W. Harris incurred in the South Carolina Lawsuit, to the extent R.W. Harris claims entitlement to the same, because coverage is validly excluded for the reasons set forth above; and

(e)     Old republic is entitled to recover from R.W. Harris its attorneys' fees and costs in bringing this action and for any other remedy as the Court deems appropriate.

November 10, 2025                                      **HUBBARD & GOTTSCHALL LAW**

*s/William H. Jordan*
Brandon R. Gottschall (Fed ID No. 12201)
William H. Jordan (Fed ID No. 10174)
1320 Main Street, Suite 300
Columbia, South Carolina 29201
brg@hglawsc.com
whj@hglawsc.com
(803) 888-4978

**Attorneys for Plaintiff Old Republic Insurance Company**